Helen BUSCH, Plaintiff,

v.

SERVICE PLASTICS, INC., Defendant.

Anthony BUSCH, Plaintiff,

v.

SERVICE PLASTICS, INC., Defendant.

Civ. A. Nos. C 65–743, C 65–744.

United States District Court
N. D. Ohio, E. D.

Sept. 12, 1966.

138

Edward J. Hyland, Hyland & Hyland, Cleveland, Ohio, for plaintiff.

Clarence L. Mollison, Cleveland, Ohio, for defendant.

## MEMORANDUM

WILLIAM K. THOMAS, District Judge.

Defendant Service Plastics, Inc., an Illinois corporation, moves to quash service of summons of plaintiff's amended complaint in each of these companion actions. On February 28, 1966 summons was served upon Ohio's Secretary of State, Ted W. Brown. As further required by Sections 2307.381 through .385 of the Ohio Revised Code, a true copy of the summons and a copy of the amended complaint were sent by registered mail, return receipt requested, to defendant Service Plastics, Inc., at Elkpark Village, Chicago, Illinois. Signed registry receipt of the defendant was attached to the summons.

In Count One of her amended complaint, plaintiff Helen Busch, among other things, alleges that

Service Plastics, Inc. is an Illinois Corporation with its principal place of business in the State and engaged in the manufacturing business and specifically engaged in the manufacturing and sale of plastic type milk bottle handles from which it derives substantial revenue in this state, and which it might reasonably have expected plaintiff, who is a member of the purchasing public, to use.

Plaintiff further says that

on or about May 31, 1964 she was a customer in a retail store located at East 110th Street and Grandview Avenue, Cleveland, Ohio, operated by the Lawson Milk Company.

On said day she says that she purchased, among other things, a gallon bottle of Lawson Milk; further as she was in the process of carrying the said gallon bottle of milk, the plastic handle with which she gripped the bottle disintegrated in her hand and the bottle was caused to drop to the hard surface below and pieces of the said bottle were driven into the plaintiff's left foot at approximately the ankle level of the plaintiff's left foot.

Plaintiff states that a jagged laceration to the plaintiff's left heel "severed what is medically referred to as the Tendon of Achilles." She describes extensive resulting disability, and states that she believes that "the effect of said injury will continue for a long time in the future." She asks for $30,000 in damages.

As the essence of her cause of action the plaintiff states that:

her injury resulted wholly, solely and proximately as a result of the defendant's breach of implied warranty in permitting the plaintiff to take possession of a defective bottle handle when it knew or in the exercise of ordinary care should have known that the said bottle handle was defective and unfit for the use for which it was intended.

In Count Two of her complaint after incorporating the allegations of the first count, plaintiff says further that her injury was the result

of the negligence of this defendant in manufacturing and permitting said plaintiff to take possession of a defective bottle handle when it knew or, in the exercise of ordinary care, should have known that the said bottle handle was defective and not fit for the use to which it was intended.

It appears that Count One speaks of defendant's breach of implied warranty while Count Two mentions defendant's negligence. But it is evident that' both counts relate to the same claim of injury resulting from a defective bottle handle. Both claims appear to assert the same tort, growing out of a breach of implied warranty. The Supreme Court of Ohio recognized tort actions based on a breach of implied warranty despite the absence of privity of contract in the case of Lonzrick v. Republic Steel Corp., 6 Ohio St. 2d 227, 218 N.E.2d 185 (1966).

The complaint of Anthony Busch, husband of Helen, also contains two counts similarly alleging breach of implied warranty by defendant Service Plastics, Inc., and negligence.

He seeks damages from defendant in the sum of $12,500 for his wife's medical expenses and loss of his wife's companionship, consortium, and services.

While not attacking the constitutionality of Ohio Revised Code Sections 2307.381–.385, Ohio's long-arm law, effective September 28, 1965, the defendant in its motion contends that Ohio Revised Code Section 2307.382 cannot be applied to secure substituted service over the person of the defendant, an Illinois corporation. The defendant is said to lack "the minimum contacts" in Ohio which do "not offend traditional notions of fair play and substantial justice," a standard of due process under the fourteenth amendment of the federal constitution adopted by the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The "minimum contacts" standard was affirmed in Travelers Health Association v. Com. of Virginia ex rel. State Corp. Comm., 339 U.S. 643, 70 S.Ct. 927, 94 L. Ed. 1154 (1950); Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) and in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Acknowledging the aptness of the "minimum contacts" standard, the plaintiffs insist that each of the first five subsections of Ohio Revised Code Section 2307.382 can justify the substituted service of process secured upon the defendant in accordance with the Ohio long-arm law.

With Ohio's long-arm law not yet a year old it is not surprising that Ohio appellate court decisions construing its provisions are not reported, and have not been discovered. This court's best judgment of how the Supreme Court of Ohio would construe the new statute will be exercised, qualified only by this court's duty to interpret the statute in conformity with controlling federal decisions on the due process clause of the fourteenth amendment.

Ohio Revised Code Section 2307.382 commences by stating

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: [there follows 7 subparagraphs]

Subsection (B) then completes Section 2307.382 by stating

When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Subsection 2307.382 (A) (1) reads: "Transacting any business in this state * * * ". This subparagraph permits any business transaction occurring in this state to be the basis for obtaining substituted service upon its participants in a cause of action arising out of the transaction.

Subsection 2307.382 (A) (2) reads: "Contracting to supply services or goods in this state * * * ". One who contracts to supply goods to be delivered in Ohio or to render services in Ohio is subject to substituted service under this subparagraph in a cause of action arising out of such a contract.

■ A business transaction in Ohio and the contract to supply goods to be delivered in Ohio each provides the essential minimum contact with Ohio, of sufficient quality, to subject a participant in the transaction and a contracting party to substituted service in a cause of action arising out of the transaction or the contract.

Defendant's answers to plaintiffs' interrogatories state that the defendant sells and has sold plastic milk jug handles to the Haynes Manufacturing Co., 4180 Lorain Avenue, Cleveland, Ohio. Defendant states "that all sales are made F.O.B. Chicago, Illinois." Concerning these sales defendant states that it "has entered into contract for the sale of its goods. However, none of these contracts provide for the sale of goods within the State of Ohio." Plaintiffs contend that:

the facts alleged in the amended complaint necessarily imply that (1) that defendant transacted business in this state and (2) contract "to supply * * * goods in this state." This is implied by the fact that defendant's goods, i. e. its plastic handles are found in this state at the scene of the accident.

■ Finding one of defendant's plastic handles at the "scene of the accident" creates no inference that defendant had participated in a business transaction in Ohio nor that defendant contracted to supply plastic jug handles in Ohio. Furthermore, the facts of record make it clear that plaintiffs are not participants in any business transaction with the defendant, nor are they parties to any contract with the defendant. Hence neither subsection (1) nor subsection (2) of Section 2307.382(A) is established.

■ Subsection 2307.382(A) (3) states: "Causing tortious injury by an act or omission in this state * * *." The scope of subsection (3) is limited to a tortious occurrence in which the causing act or omission as well as the resulting tortious injury occur in Ohio. Subsection (3) contemplates that the act or omission causing tortious injury must be committed in Ohio. Occurrence of the tort feasor's act or omission in Ohio establishes the tort feasor's contact with Ohio out of which contact arises the cause of the action against the tort feasor.

■ The amended complaints do not allege that the defendant committed any

negligent act or omission in Ohio. Rather the amended complaints state that the resulting injury happened in Cleveland, Ohio, on May 31, 1964. This description of the injury does not bring the alleged cause of action within subsection 2307.382(A) (3).

Ohio Revised Code Subsections 2307.-382(A) (4) and (5) provide further grounds for substituted service:

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

To comply with subsection (4) it is first essential to establish that a tortious injury occur in Ohio, although the act or omission takes place outside of Ohio. To comply with subsection (5) it is first essential that an injury occur in Ohio and that it be caused by "breach of warranty expressly or impliedly made in the sale of goods outside this state" when the person who thus caused the injury "might reasonably have expected such person to use, consume, or be affected by the goods in this state."

In addition, subsections (4) and (5) further require that it be established that the person causing the injury "also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state."

Each of these three alternative conditions must be construed so as to conform to the "minimum contacts" standard in order that Ohio's long-arm law meet the demands of the due process clause of the fourteenth amendment of the federal constitution. Thus, a regular doing or solicitation of business contemplates contacts or activities in Ohio. Similarly, "any other persistent course of conduct" signifies conduct within Ohio by the person charged with causing the injury. It should be noted that a persistent course of conduct contemplates a quality of contacts in Ohio different from those involved in a regular doing of business in Ohio. Thus, a regular doing or solicitation of business would be proved by a showing that the nonresident or foreign corporation maintained an office in Ohio or employed a sales or service force in Ohio. On the other hand, proof of a persistent course of conduct might be satisfied by a showing that the nonresident or foreign corporation continuously and not sporadically relied on and benefited from one or more independent sales or service representatives operating in Ohio.

Uncontradicted answers of the defendant to plaintiffs' interrogatories indicate that defendant solicits no business in Ohio; that it has no employees in Ohio; that it has no manufacturer's representative or other agent in Ohio; that it has no office, no real property and possesses no personal property in Ohio; and that defendant has no telephone listing in Ohio.

Rather than establish the first and second alternative conditions of subsections (4) and (5), the facts of record disclose that defendant Service Plastics has not regularly done business in Ohio, nor has it regularly solicited business in Ohio, nor has it engaged in any other persistent course of conduct in Ohio.

The third alternative condition of subsections (4) and (5) provides that the person causing injury "derives substantial revenue from goods used or consumed or services rendered in this state." Substantial revenue is a relative term.

The meaning of the word substantial "is to be gauged by all the circumstances surrounding the transaction with respect to which it has been used." 83 C.J.S. *Substantial* at p. 762 (1953). Varying with each nonresident business the words "substantial revenue" would not involve nor intend any fixed minimum.

■ A nonresident business may derive substantial revenue from goods used or consumed in this state, without regularly doing business in Ohio, or regularly soliciting business in Ohio or without engaging in any other persistent course of conduct in Ohio. Yet to uphold substituted service upon a nonresident, adherence to the "minimum contacts" standard requires proof that in deriving substantial revenue from goods used or consumed in the state the nonresident business have "minimum contacts."

■ In the amended complaint the plaintiffs allege that Service Plastics, Inc., "engaged in the manufacturing and sale of plastic type milk bottle handles from which it derives substantial revenue in this state." In pleading the language of the third alternative condition of Ohio Revised Code Subsections 2307.-382(A) (4) and (5) plaintiffs indicate reliance upon this condition. Does the record support substituted service based on this third alternative condition?

The facts of record reveal that the "volume and quantity sold," presumably plastic jug handles, by defendant to Haynes Manufacturing Company in 1961 was 5,250,000; in 1962—9,567,250; in 1963—9,151,250; in 1964—8,898,750 and in 1965—10,613,750. The dollar volume of defendant's business with Haynes Manufacturing Company was $130,000.-00 in 1961; $170,000.00 in 1962; $180,-000.00 in 1963; $163,800.00 in 1964, and $200,486.00 in 1965. It is determined and found that during each of the past five years, defendant derived "substantial revenue" from goods purchased by Haynes Manufacturing Company of Cleveland, Ohio. But did the defendant in deriving this substantial revenue maintain "minimum contacts" with Ohio?

*Aftanase v. Economy Baler Company*, 343 F.2d 187 (8th Cir. 1965) summarizes the factors affecting the "minimum contacts" standard. Applying Minnesota's "single-act" statute, M.S.A. § 303.13, sub. 1(3), the Eighth Circuit Court of Appeals upheld substituted service on the defendant, a Michigan manufacturer of scrap metal balers. The plaintiff was injured while using defendant's baler at his Minnesota place of employment and sued defendant in the United States District Court for the District of Minnesota. The District Court's quashing of service on the nonresident defendant was reversed. In its opinion the Court of Appeals condensed the five previously mentioned United States Supreme Court decisions in these words:

> We also think it is fair to say that these five Supreme Court cases establish only general and not precise guidelines. Perhaps they purposely do no more than this. We observe, however, that, at one time or another in the opinions, three primary factors, namely, the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts, are stressed, and that two others, interest of the forum state and convenience, receive mention. Id. at 197.

As early as 1961 the defendant entered into a contract with Haynes Manufacturing Company of Cleveland to sell (and necessarily deliver) plastic milk jug handles to Haynes. The number of plastic milk jug handles sold and delivered has been in the millions; and the dollar volume of these sales annually has ranged between $100,000.00 and $200,000.00. Contacts between the defendant and Haynes are "three or four times weekly by phone" defendant answered to an interrogatory. Defendant's products have been shipped to Cleveland, F.O.B. Chicago. In compliance with Ohio Revised Code Section 1302.48(C) (dealing with F.O.B. shipments), it is presumed that defendant has notified Haynes of each shipment.

Asked "Whether in * * * dealings with Haynes Manufacturing Company your company contemplated the use of your product within the State of Ohio," the defendant answered "We did not contemplate that the product would be sold in Ohio or any other particular state." From this answer (involuted as it is) and from the substantial volume of sales to Haynes in Cleveland, at the least it may be presumed that defendant knew or should have reasonably expected that its products would be sold and used in Ohio and perhaps other states. Plaintiffs' sworn claim says in effect that defendant's plastic milk jug handle on a Lawson Milk bottle disintegrated in her hand causing the bottle to drop. This offers proof, not denied in the record, that defendant's product was used in Ohio.

Spanning the five-year period 1961 through 1965 it is evident that the defendant has had many business contacts with Ohio. What about the quality of these contacts? The requisite quality of the contacts need not depend on the presence of the defendant in Ohio. In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) the Supreme Court noted that it has "abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such [foreign] corporations." An Arizona insurance corporation issued an insurance contract to a California resident. The defendant Texas insurance company later assumed this contract. Thereafter, until his death, the California resident mailed premiums from his home to the Texas insurance company. This single contact and its related contacts prompted the Court to hold that it was "sufficient for purposes of due process that the suit was based on a contract which had substantial connection with" California.

In Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), the Supreme Court of Illinois upheld substituted service upon an Ohio manufacturer of a water heater safety valve, in an action brought in Illinois for personal injuries by an Illinois resident injured by the explosion of the water heater. The court noted that

> the defendant's only contact with this State is found in the fact that a product manufactured in Ohio was incorporated in Pennsylvania, into a hot water heater which in the course of commerce was sold to an Illinois consumer. Id. 176 N.E.2d at 764.

In Aftanase, supra, the Eighth Circuit Court of Appeals likewise concluded that the "minimum contacts" standard does not require the foreign corporation to be physically present in the state of suit. Considered as Minnesota contacts of the Michigan corporation were shipment of balers into Minnesota "for a number of years and on a number of occasions", the sale and delivery of replacements parts for defendant's Minnesota balers, and the sending of brochures and parts lists into the state. In reversing the United States District Court of Minnesota, the Court of Appeals declined to follow earlier decisions of the same district court, including Mueller v. Steelcase, Inc., 172 F.Supp. 416 (D.Minn. 1959).

The continuous sale and shipment of sizeable quantities of defendant's products to Ohio, from which it derived substantial revenue, related telephone calls and shipment notices to its customer, Haynes Manufacturing Company in Cleveland, substantially connect the defendant with Ohio from at least as early as 1961 up to the present time. These continuous and systematic business connections between the defendant in Chicago and Haynes Manufacturing in Cleveland are typical of the "nationalization of commerce", which McGee found sufficient to justify substituted service upon a nonresident foreign corporation. As in Gray, the defendant does not deal directly with consumers in other states. Here, as there, the benefit which the defendant derives from Ohio's laws may be indirect. Of course, the benefit would be direct enough should the defendant

ever resort to Ohio's courts to sue Haynes. In the present case as in *Gray* "it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here." *Gray,* supra 176 N.E.2d at 766.

The sufficiency of defendant Service Plastics' contact with Ohio is further found in the implied warranty of defendant Service Plastics that its product when used in Ohio would be "fit for the ordinary purposes for which such goods are used". Ohio Revised Code § 1302.27. Defendant Service Plastics is presumed to anticipate that a reasonable consequence of a breach of the implied warranty of its product would possibly result in injury to a person using one of its plastic milk jug handles in carrying a bottle of milk. The defendant might reasonably have expected Ohio citizens to use, consume and be affected by the sale of its products in Ohio. Sufficient quality in defendant's contacts with Ohio is established.

Proceeding to the other factors affecting the "minimum contacts" standard, listed in *Aftanase,* supra, the source and connection of the plaintiffs' causes of action with those contacts is clear. This is particularly true now that Ohio's Supreme Court has determined in Lonzrick v. Republic Steel Corp., 6 Ohio St.2d 227, 218 N.E.2d 185 (1966), that "the plaintiff in a products liability case is not restricted to prosecuting his action on the basis of negligence alone but may proceed in an action in tort based upon the theory of implied warranty, notwithstanding that there is no contractual relationship between the plaintiff and the defendant" (Syllabus One).

The Ohio long-arm law represents a reasonable implementation of Ohio's concern and interest in providing an Ohio forum in which persons suffering damages in person, business, or property by reason of conduct, acts, or omissions, or express or implied breaches of

contract or warranty occasioned by a foreign corporation or other nonresident may bring suit and gain personal jurisdiction over the foreign corporation or nonresident. Notification of the defendant that it has been sued, accompanied by registered mail delivery of a copy of the summons on the secretary of state, notice of answer day, and of a copy of the complaint fully represents and meets "traditional notions of fair play and substantial justice."

Striking the balance of convenience between the plaintiffs and the defendant Illinois corporation it would appear that an Ohio forum rather than an Illinois forum can resolve the plaintiffs' causes of action, involving an incident and injury occurring in Cleveland, Ohio with greatest facility and convenience to all concerned.

Considering all relevant factors it is concluded that the defendant derived substantial revenue through the sale of products used and consumed in Ohio; and that the defendant in deriving this substantial revenue has maintained and continues to maintain "minimum contacts" with Ohio. Substituted service upon the defendant through the application of Subsections 2307.382(A) (4) and (5) (the third alternate condition of each subsection) is sustained by the complaints, answers to interrogatories, and the other facts of record.

Ohio's long-arm law has been held to be procedural and remedial, O'Mara v. Alberto-Culver Company, 6 Ohio Misc. 132, 215 N.E.2d 735 (C. P. Hamilton County, 1966). In ascertaining the Ohio law on this point weight is given to this thoughtful trial court decision. Analogously, the California substituted service statute was held to be remedial in *McGee,* supra. The plaintiffs' actions were filed November 10, 1965. The causes of action existed at the time of, but the filing of the actions postdated, the effective date of Ohio's long-arm law (September 28, 1965). It is determined that Ohio Revised Code Sections 2307.381—.385 pertains to plaintiffs' actions and could be used by these

plaintiffs in securing personal jurisdiction over the defendant. Ohio Revised Code Section 1.20 is found inapplicable.

For the reasons given defendant's motion to quash service in each case is overruled.