McHugh *v.* Prestodial, Inc.

(No. A 224039—Decided September 17, 1968.)

Court of Common Pleas, Hamilton County.

*Mr. Eugene J. Stagnaro, Jr.,* for plaintiff.
*Mr. Jerome S. Teller* and *Messrs. Chalfie & Teller,* for defendant.

Keefe, J.   The matter before us is defendant's motion to quash the service of summons "for the reason that such

service was illegal and unconstitutional and the court has no jurisdiction over its person."

Plaintiff has attempted to secure jurisdiction over the defendant under the provisions of Ohio's long-arm statute, Sections 2307.381 to 2307.385 inclusive, Revised Code. The records show that there has been service of process on the defendant through the office of the Secretary of state of Ohio.

Plaintiff is seeking to recover damages for an alleged breach of a contract between himself and the defendant.

The defendant is a New York Corporation maintaining its sole place of business in the state of New York. It manufactures a telephone answering device and enters into distributorship contracts with independent contractors who are in business for themselves. It did this with the plaintiff. An officer of the defendant corporation met with the plaintiff in Kentucky at or near the Greater Cincinnati Airport in Boone County, Kentucky, for the purpose of discussing a distributorship for the plaintiff. No conference between the plaintiff and any agent or representative of the defendant ever took place in Ohio. Plaintiff ultimately executed the contract in Cincinnati and mailed it to the defendant in New York. The defendant executed the contract in New York and returned it to the plaintiff by mail.

The distributorship agreement provides in paragraph 15, as follows:

"This agreement is executed in and is to be governed and construed according to the laws of the state of New York, * * *."

There seems to have been only one shipment of automatic dialers (on June 30, 1966), and these were shipped to plaintiff f. o. b. New York, New York. Plaintiff was responsible for its transportation to Ohio. The value of the June 30, 1966, shipment was $4,475.00. Soon after, three (3) *replacement units* were sent to plaintiff at defendant's expense. The value of these three replacement units would seem to have been approximately $135.00, and the shipping costs less than ten dollars. In essence, the entire business transacted between plaintiff and defendant con-

sisted of the June 30, 1966, shipment f. o. b. New York, and the subsequently shipped replacement units.

The question here, of course, is whether Ohio's long-arm statute can be invoked against the defendant. This involves the "minimum contacts" theory which permits a forum state (Ohio here) to exercise personal jurisdiction over a nonresident defendant. The theory stems from a decision of the United States Supreme Court, *International Shoe Co.* v. *Washington* (1945), 326 U. S. 310. Prior to *International Shoe*, a nonresident or foreign corporation was subject to being served within the forum state provided the foreign corporation was "doing business" within the forum. However, a nonresident corporation was not "doing business" in the forum state unless the corporation had very substantial contacts within the forum. For example, the nonresident corporation at least had to have an office for soliciting business within the forum. *I. N. Price & Co.* v. *Davis* (1923), 22 Ohio App. 388.

In the landmark case of *International Shoe*, the Supreme Court decided that due process does not require that the defendant be "doing business" within the state, but that it have certain minimum contacts with it and that the maintenance of the suit not offend traditional notions of fair play and justice.

The court held in *International Shoe Co.* v. *Washington*, 326 U. S. 310, 316:

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their *de facto* power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer* v. *Neff*, 95 U. S. 714, 733. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Milliken* v. *Meyer*, 311

U. S. 457, 463. See Holmes, J., in *McDonald* v. *Mabee*, 243 U. S. 90, 91. Compare *Hoopeston Canning Co.* v. *Cullen*, 318 U. S. 313, 316, 319. See *Blackmer* v. *United States*, 284 U. S. 421; *Hess* v. *Pawloski*, 274 U. S. 352; *Young* v. *Masci*, 289 U. S. 253."

In *Hanson* v. *Denckla* (1958), 357 U. S. 235, 251, the United States Supreme Court held:

"In response to * * * changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of *Pennoyer* v. *Neff*, 95 U. S. 714, to the flexible standard of *International Shoe Co.* v. *Washington*, 326 U. S. 310. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * Those restrictions are more than a guaranty of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective states. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that state that are prerequisite to its exercise of power over him. * * * We fail to find such contacts in the circumstances of this case."

Each such case as the one under consideration must be determined upon its own facts and on the facts of this case I am of the opinion that by applying the fairness test promulgated both by *International Shoe* and *Hanson* v. *Denckla*, the defendant cannot be held to be subject to the jurisdiction of the courts of this state under Ohio's long-arm statute.

In deciding I have given great weight to four particulars, *inter alia*. 1. No representative or agent of the defendant ever came into Ohio. 2. In essence, it was a solitary business transaction. *Erlanger Mills, Inc.*, v. *Cohoes Fibre Mills, Inc.* (1956), 239 F. 2d 502, is the leading case on the single contractual contact with the forum state. The United States Circuit Court of Appeals held that the single sale of goods, without other contacts with the forum, was insufficient to vest jurisdiction under a long-arm statute.

3. The money value of the transaction ($4,475.00), was not substantial. In *Busch* v. *Service Plastics Inc.*, 261 F. Supp. 136, 11 Ohio Misc. 131 (U. S. District Court, Northern District, Ohio—1966), which has been brought to our attention, the court found that the nonresident corporation derived substantial revenue from goods used or consumed in this state. The defendant in *Busch* earned more than $100,000 per year from its Ohio sales over a five year period. Obviously, the *Busch* revenue situation differs materially from the single $4,475.00 transaction in this case. 4. There was no tortious injury to anyone in this state such as was the case in *Busch, supra,* in which the plaintiff suffered a jagged laceration to her left heel and claimed that her Achilles tendon was severed as the result of an alleged defect in a bottle manufactured by that defendant.

I concur with the *Busch* court's analysis of the meaning of "substantial revenue" as used in Section 2307.382, Revised Code.

The Judge in *Busch* wrote:

"Substantial revenue is a relative term. The meaning of the word substantial 'is to be gauged by all the circumstances surrounding the transaction with respect to which it has been used.' 83 C. J. S. Substantial, at p. 762 (1953). Varying with each nonresident business the words 'substantial revenue' would not involve nor intend any fixed minimum."

For the reasons given, the motion to quash is well taken and it is granted. The attempted service under the long-arm statute is ineffective.

*Motion to quash granted.*