Steven WEBER, Plaintiff,

v.

NATIONAL FOOTBALL LEAGUE, et al., Defendants.

No. 3:99CV7790.

United States District Court, N.D. Ohio, Western Division.

July 31, 2000.

Craig Bloom, Debevoise & Plimpton, New York, NY, Myron Charles Collins, Eastman & Smith, Toledo, OH, David M. Jones, Eastman & Smith, Toledo, OH, Bruce P. Keller, Debevoise & Plimpton, New York, NY, Stuart G. Parsell, John W. Zeiger, Zeiger & Carpenter, Columbus, OH, for defendants.

Anthony J. DeGidio, Calamunci, Groth, Joelson & Walerius, Toledo, OH, for plaintiff.

## ORDER

CARR, District Judge.

This is a case in which plaintiff alleges that defendants violated provisions of the Lanham Act, 15 U.S.C. § 1051, the Sherman Act, 15 U.S.C. §§ 1–2, the common law, and Ohio statutory law, and seeks declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. Specifically, plaintiff claims that defendants conspired to abuse their rights as trademark holders and otherwise restrain trade. Pending is a motion by the National Football League, NFL Properties, the New York Jets Football Club,

Inc., and the Miami Dolphins, Ltd. (collectively "the football defendants") to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim on which relief can be granted.[1] For the following reasons, the football defendants' motion to dismiss shall be granted.

## BACKGROUND

Plaintiff Steven Weber is a resident of Pennsylvania. He is in the business of buying and selling internet domain names. In May 1997, plaintiff registered and paid for the rights to the domain names "jets.com" and "dolphins.com" through Network Solutions, Inc. (NSI), a District of Columbia corporation responsible for such registration. Shortly thereafter, plaintiff listed these domain names for sale on his website at "domainsale.com." This prompted a letter from counsel for the football defendants to plaintiff, claiming that he had violated their trademark rights. (*See* Doc. 1, Ex. 3).

The football defendants also contacted NSI, seeking to have the rights to the domain names transferred to the New York Jets Football Club, Inc. and the Miami Dolphins, Ltd., respectively. (*See* Doc. 1 Ex. 4). NSI, pursuant to its policies, placed the domain names on hold and barred their sale or use pending the outcome of the dispute. "Jets.com" and "dolphins.com" have remained on hold by NSI since 1997. (*See* Doc. 1 at 12).

In the interim, plaintiff re-registered the aforementioned domain names with NSI in May 1999. (*See* Doc. 28 at 4).

Plaintiff filed the instant action claiming that defendants violated federal antitrust and trademark law and Ohio statutory and common law by: 1) wrongfully exercising control over his property, 2) unlawfully restraining trade in Ohio and elsewhere, 3) tortiously interfering with plaintiff's busi-

---

1. Defendant Network Solutions, Inc. filed a separate motion to dismiss for improper venue on the ground that plaintiff was bound by a contractual forum selection clause requiring that any lawsuit be filed in the United States District court for the Eastern District of Virginia, Alexandria Division. That motion was granted in an earlier opinion (*See* Doc. 52).

ness relationships, and 4) abusing their rights as trademark holders. (*See* Doc. 37 ¶ 8).

## PROCEDURAL HISTORY

The football defendants moved to dismiss plaintiff's complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), improper venue pursuant to Fed. R.Civ.P. 12(b)(3), and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (*See* Doc. 14 at 1). The football defendants' central argument was that plaintiff's claims did not satisfy the Ohio long-arm statute, codified at O.R.C. § 2307.382(A). (*See* Doc. 14 at 6–10).

While the original motion to dismiss was pending, plaintiff filed a first amended complaint in which he reasserted his original claims and alleged additional claims under the Sherman Act, 15 U.S.C. §§ 1–2, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. (*See* Doc 37 ¶ 8). The first amended complaint also included claims that defendants' actions constituted an unlawful taking of property in violation of the Fifth Amendment to the United States Constitution, and civil conspiracy. (*See* Doc. 37 at 15–16 and 24).

In his first amended complaint plaintiff claimed that this Court has personal jurisdiction over defendants and that venue is proper pursuant to § 12 of the Clayton Act. (*See* Doc. 37 ¶¶ 10 and 12). Section 12 states that any suit brought under antitrust laws against a corporation "may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business ..." 15 U.S.C. § 22. Plaintiff further asserted that this Court has supplemental jurisdiction over all other causes of action, because they are alleged to be part of the same case or controversy, pursuant to 28 U.S.C. § 1367. (*See Id.* ¶ 11).

The football defendants filed a motion to dismiss the first amended complaint for lack of personal jurisdiction, improper venue, and, in the alternative, for failure to

state a claim in all but the fourth cause of action for declaratory relief. (*See* Doc. 48 at 2). Specifically, the football defendants renewed the arguments from their initial motion to dismiss the original causes of action (*See* Doc. 49 at 2), and argued that the new causes of action were subject to dismissal under Fed. R. Civ. P 12(b)(6) in that they all fail to state a claim on which relief can be granted. (*See Id.* at 3–4).

As to the antitrust claims, the football defendants argue that: 1) the Noerr–Pennington Doctrine "immunizes litigation and related pre-litigation conduct from antitrust challenges under the circumstances of this case." (*see* Doc. 49 at 6), and; 2) plaintiff fails to claim a legitimate antitrust injury, and thus the Clayton Act does not apply to establish jurisdiction or venue. For purposes of this order, the football defendants' motions to dismiss will be considered together as a single motion.

## DISCUSSION

Under the Clayton Act, "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." 15 U.S.C. § 22. Plaintiff alleges injuries in violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, to which the Clayton Act applies. Thus, plaintiff argues that this Court has jurisdiction and is a proper venue.

Congress conferred broad jurisdiction in antitrust cases to protect individuals injured by corporate violations of antitrust laws from the "often insuperable obstacle" of having to redress the wrong in a distant forum where the corporation may be headquartered. *United States v. Scophony Corporation,* 333 U.S. 795, 808, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). But this jurisdiction is not limitless. The Clayton Act "does not intend to provide [a] forum shopping plaintiff with unfettered choice of venue." *King v. Johnson Wax Associates,*

*Inc.,* 565 F.Supp. 711, 714–15 (D.C.Md. 1983).

Based on the contention that well-founded antitrust claims would be proper in this Court under the Clayton Act, plaintiff asserts that supplemental jurisdiction is proper over the additional causes of action pursuant to 28 U.S.C. § 1367. (*See* Doc. 37 ¶ 11).

Because most of the plaintiff's claims are based on supplemental jurisdiction, it would be premature to examine the football defendants' objections to jurisdiction and venue of those claims without first making a determination of whether plaintiff has stated a claim under antitrust statutes in the first instance. If plaintiff has failed to meet the burden of stating a claim in his first two causes of action under the Sherman Act, then the antitrust venue provision of the Clayton Act will not apply and the other causes of action must be examined for proper jurisdiction and venue on other grounds.

## I. Antitrust Claims

■ No complaint shall be dismissed unless the plaintiff has failed to allege facts that, construed in plaintiff's favor, would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits may also be taken into account. *Yanacos v. Lake County,* 953 F.Supp. 187, 191 (N.D.Ohio 1996). Courts in antitrust actions do not have to accept as true the conclusory allegations of law in consideration of a 12(b)(6) motion to dismiss. *Falstaff Brewing Co. v. Stroh Brewery Co.,* 628 F.Supp. 822, 826 (N.D.Cal.1986).

Here, plaintiff alleges that the football defendants violated both §§ 1 and 2 of the Sherman Antitrust Act. I disagree.

## A. Count I— § 1 of the Sherman Act

■ Section 1 of the Sherman Antitrust Act states that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States ... is hereby declared illegal." 15 U.S.C. § 1. This Court has ruled that to establish a violation of § 1 of the Sherman Act, three elements must be shown: 1) a contract, combination or conspiracy, 2) affecting interstate commerce, and 3) an unreasonable restraint of trade. *Mowery v. Standard Oil of Ohio,* 463 F.Supp. 762, 765 (N.D.Ohio 1976).

■ Plaintiff argues that he has satisfied the first element because his complaint alleges that the football defendants "agreed, colluded, and/or conspired to restrain trade." (*See* Doc. 37 ¶ 101). The football defendants counter that plaintiff has failed to show any specific conduct that supports a finding of collusion. The Sixth Circuit has ruled that conspiracy may not be inferred under the Sherman Act "if there is no economic motive to conspire and there is non-conspiratorial explanation for alleged conspiratorial conduct." *Riverview Investments, Inc. v. Ottawa Community Improvement Corporation,* 899 F.2d 474, 483 (6th Cir.1990). "Close ties between defendants or even the power of one to dominate the other are not, by themselves, sufficient predicates for inferring the existence of a conspiracy to restrain trade." *Eureka Investment Corp. v. Chicago Title Insurance Co.,* 743 F.2d 932, 942 (D.C.Cir.1984). Further, unilateral action by one party, absent a showing that it was done pursuant to a conspiracy, cannot violate § 1 of the Sherman Act. *Schwimmer v. Sony Corporation of America,* 677 F.2d 946, 952 (2nd Cir.1982).

Conspiracies are rarely explicit agreements, they almost always must be proven by "inferences that may be fairly drawn from the behavior of the alleged conspirators." *Michelman v. Clark–Schwebel Fiber Glass Corp.,* 534 F.2d 1036, 1043 (2nd Cir.1976). At a minimum, however, "the

circumstances [must be] such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *American Tobacco Co. v. United States,* 328 U.S. 781, 810, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946).

■ Plaintiff's evidence of collusion and conspiracy is a letter from counsel, on behalf of the football defendants collectively, that plaintiff was infringing upon their trademark rights. (*See* Doc. 6 at Ex. 3). This evidence, together with plaintiff's allegations of collusive and conspiratorial conduct, is enough to survive dismissal under 12(b)(6).

■ Next, plaintiff alleges that he has satisfied the second element of an antitrust claim under the Sherman Act because the sale of domain names is an activity of interstate commerce. To establish that interstate commerce has been impacted, plaintiff must demonstrate either 1) that the proscribed activities are actually "in" or part of interstate commerce, *Mandeville Island Farms v. American Crystal Sugar Co.,* 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948), or 2) that the defendant's business activities in general substantially affect interstate commerce. *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980).

■ Both prongs are met here. First, it cannot seriously be disputed that domain names have become a valuable commodity in today's economy. In the battle to obtain as many website "hits" as possible, companies have paid hundreds of thousands, and sometimes millions, of dollars for domain names that consumers will remember and use when browsing the internet. Second, the football defendants' business activities clearly have a substantial effect on interstate commerce. The NFL and its member teams generate substantial revenue in Ohio and elsewhere and their actions indeed have an effect on interstate commerce. As a matter of common sense, this effect cannot be refuted. Therefore, I find that the second element of an antitrust claim under § 1 of the Sherman Act is satisfied.

Finally, plaintiff alleges that he has satisfied the third element of § 1 of the Sherman Act because he has pled that the football defendants' effort to restrict his use of "dolphins.com" and "jets.com" is a restraint of trade. The football defendants counter that their actions were legitimate steps and lawful actions in an effort to protect their trademark rights, and therefore do not implicate antitrust laws.

■ A plaintiff seeking to show restraint of trade must prove that the alleged combination or conspiracy had an unlawful purpose or an anti-competitive effect. *Stratmore v. Goodbody,* 866 F.2d 189, 192 (6th Cir.1989); *Lamb Enterprises, Inc. v. Toledo Blade Co.,* 461 F.2d 506, 517–20 (6th Cir.1972) (holding that antitrust laws are not violated by a combination or conspiracy to accomplish a lawful purpose by lawful means).

■ A trademark is not an unlawful monopoly. *AMP, Inc. v. Foy,* 540 F.2d 1181, 1183 (4th Cir.1976). Trademark laws were intended to protect the consuming public from deception and confusion, oftentimes resulting from imitation of the distinguishing trademarks of established products, and to protect the integrity of the trademark owner's product identity. *Application of Honeywell, Inc.,* 497 F.2d 1344, 1348 (C.C.P.A.1974).

Courts have found that efforts to protect trademark rights, even those that go as far as bringing suit against a party who has allegedly infringed upon or diluted the trademark owner's rights, represent fair competition, further general trademark policies, and do not constitute violations of antitrust laws. *Clorox Co. v. Sterling Winthrop, Inc.,* 117 F.3d 50, 61 (2d Cir. 1997) (noting that in almost every instance where the antitrust misuse of a trademark has been raised as a defense to infringement, it has been rejected); *Drop Dead*

*Co. v. S.C. Johnson & Son, Inc.,* 326 F.2d 87, 96 (9th Cir.1963) (holding that registering multiple marks, mass advertising, mass sales, and *the bringing of infringement suits* are lawful acts which constitute the sort of aggressive competition and promotion that antitrust law seeks to protect) (emphasis added); *Car–Freshner Corp. v. Auto Aid Mfg. Corp.,* 438 F.Supp. 82, 87 (N.D.N.Y.1977) (holding that trademark enforcement is fair and aggressive competition which doesn't violate antitrust laws).

■ The weight of the authority dictates that legal efforts to protect trademark rights simply do not constitute a restraint of trade in violation of antitrust laws. That does not mean that there has been no violation of law on the part of the trademark holder, it simply means that it cannot be characterized as violating antitrust legislation where there is no showing by the plaintiff that the action itself was illegal. Here, plaintiff merely has alleged the bald elements of a private antitrust claim in vague and conclusory terms. But more than vague and conclusory terms must be alleged to prevent dismissal on a defendant's 12(b)(6) motion. *Hohensee v. Akron Beacon Journal Publishing Co.,* 174 F.Supp. 450, 452 (N.D.Ohio 1959). More significantly, plaintiff must do more than allege that a defendant has sought to enforce his trademark rights to state an antitrust claim. He has not done so. Therefore, I find in the instant case that plaintiff has failed to allege actionable restraint of trade by the football defendants in violation of § 1 of the Sherman Act. Count I, accordingly, shall be dismissed.

### B. Count II— § 2 of the Sherman Act

■ Section 2 of the Sherman Act states that any person is guilty of a felony who "shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. The Supreme Court has ruled that an offense under § 2 of the Sherman Act has two elements: 1) possession of monopoly power in. the relevant market, and 2) willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *United States v. Grinnell Corp.,* 384 U.S. 563, 570–571, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

■ When the allegation under § 2 of the Sherman Act is that a party has *attempted* to monopolize, a plaintiff must prove 1) that the defendant has engaged in predatory or anti-competitive conduct 2) with a specific intent to monopolize 3) and a dangerous probability of achieving monopoly power. *Spectrum Sports v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247, (1993). The Sixth Circuit has ruled that specific intent to monopolize may be inferred from anti-competitive conduct, but not from legitimate business practices aimed at succeeding in competition. *White & White v. American Hospital Supply Corp.,* 723 F.2d 495, 506 (6th Cir.1983). Whether the football defendants' action were anti-competitive in nature or merely legitimate business practices does not, however, need to be addressed because plaintiff mischaracterizes the relevant market.

■ The Supreme Court has noted that to determine whether there is a dangerous probability of achieving monopolization, courts consider the relevant market and the defendant's ability to lessen or control competition therein. *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. at 456, 113 S.Ct. 884. Plaintiff argues that the relevant market should be defined by the demand for the domain names "jets.com" and "dolphins.com." I disagree.

■ Plaintiff claims that the football defendants have "used the ordinary lawful act of infringement enforcement as the vehicle for an unlawful scheme to attempt to extend their legal monopoly in the [jets-dolphins] word market into an illegal mo-

nopoly." *See* Doc. 37 at ¶ 108. The football defendants argue that the market should not be defined in terms of their specific marks, but rather in terms of domain names in general, and since the number of domain names is essentially limitless, their actions could not possibly be seen as an attempt to control or monopolize that market.

The logic of the football defendants' argument is sound, and there is support for their contention in a recent Seventh Circuit decision. "Product markets are not defined in terms of one trademark or another; trademarks simply identify the origin of a product. [It cannot be argued] that Amoco gasoline, Mobil gasoline, and Shell gasoline are three separate product markets." *Generac Corp. v. Caterpillar Inc.*, 172 F.3d 971, 977 (7th Cir.1999). Moreover, the Supreme Court has ruled that in determining the relevant market for an action under § 2 of the Sherman Act, "no more definite rule can be declared than that the commodities reasonably interchangeable by consumers for the same purposes make up that part of the trade or commerce." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).[2]

Although domain names are not a traditional commodity, for the purposes of a monopolization claim under the Sherman Act, the examination of the relevant market should be the same. In this case, the market is defined in terms of domain names in general, not "jets.com" and "dolphins.com." Therefore, I find that plaintiff has not demonstrated that the football defendants have attempted to control the market, and there is no possibility for monopolization thereof. Accordingly, Count II, that the football defendants violated § 2 of the Sherman Act, shall be dismissed.[3]

## II. The Remaining Claims

In their motion to dismiss the first amended complaint, the football defendants renewed their argument from their initial motion that plaintiff's claims should be dismissed for lack of personal jurisdiction and improper venue pursuant to Fed. R.Civ.P. 12(b)(2) and 12(b)(3), respectively. Because plaintiffs claims under the Sherman Act are being dismissed, the antitrust venue and service of process provision of 15 U.S.C. § 22 is not applicable, so this Court does not have supplemental jurisdiction over the remaining causes of action. Therefore, it is appropriate that the remaining causes of action be examined for jurisdictional and venue purposes on an independent basis.

■■ When a Rule 12(b) motion is filed challenging personal jurisdiction, the plaintiff has the burden of establishing that jurisdiction exists. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir.1998). A federal court properly can exercise jurisdiction only if the plaintiff demonstrates that the chosen forum satisfies a two part test: 1) the defendant must be amenable to suit under the forum's long arm statute, and 2) the due process requirements of the Constitution must be met. *Close v. New Line Cinema Corp.*, 1994 WL 761025, *1 (N.D.Ohio Sept.12, 1994) (citing *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1115 (6th Cir.1994)). Accordingly, "plaintiff must establish that this court has the statutory power to hear this case, pursuant to Ohio's long-arm statute, as well as the constitutional right to hear this case because of defendants' 'minimum contacts' with the State of Ohio." *Douglas v. Modern Aero, Inc.*, 954 F.Supp. 1206, 1210 (N.D.Ohio 1997).

---

**2.** The Court there found that the interchangeability of cellophane with other wrapping materials sufficed to make it part of the food wrap market.

**3.** Because plaintiff has failed to establish antitrust violations under §§ 1 and 2 of the Sherman Act, the football defendants' contention that plaintiffs claims are barred due to the Noerr–Pennington Doctrine need not be addressed.

▪ The football defendants maintain that jurisdiction here is not supported by any of the enumerated acts or omissions set forth in Ohio's long arm statute. (*See* Doc. 14 at 6–7). I agree.

The Ohio long arm statute is codified at O.R.C. § 2307.382(A). Subsections (1)-(3) of that statute require conduct by a defendant within the state of Ohio to create personal jurisdiction. O.R.C. § 2307.382(A)(1)-(3). Where there is no connection between a defendant's acts in Ohio and a plaintiff's injury, these subsections are not satisfied. *Vorhis v. American Medical Systems, Inc.*, 1997 WL 476527, *2 (6th Cir. Aug. 19, 1997).

Plaintiff claims, and the football defendants do not refute, that the National Football League conducts business in Ohio. (*See* Doc. 25 at 3–4). The alleged injury, however, does not "arise from" the NFL's Ohio business as required by subsections (1)-(3), and, therefore, subsections (1)-(3) cannot provide a basis for personal jurisdiction over the NFL.

Moreover, subsections (5) and (7) of Ohio's long-arm statute, which plaintiff cites, fail to support personal jurisdiction over the football defendants because they are not, on their face, relevant to this action. Subsection (5) of O.R.C. § 2307.382 deals with injury caused by breach of warranty in the sale of goods, while subsection (7) requires that a criminal act have taken place within the state. O.R.C. § 2307.382(5) and (7). Neither of these subsections relates to the plaintiff's claims in this dispute.

Subsection (6) does not apply because plaintiff has not shown, or even alleged, that defendants' acts were committed "with the purpose of injuring persons, when [defendants] might reasonably have expected that some person would thereby by injured in this state," as the statute requires. O.R.C. § 2307.382(A)(6).

Lastly subsection (4) of the Ohio long arm statute fails to establish jurisdiction because plaintiff has not alleged any specific injury suffered in Ohio. Subsection (4), on which plaintiff primarily relies, states that courts may exercise personal jurisdiction over a defendant when that defendant "[c]aus[es] tortious injury in this state ..." O.R.C. § 2307.382(A)(4).

That a tortious injury has occurred in Ohio is an essential element of establishing personal jurisdiction under subsection (A)(4). *Busch v. Service Plastics, Inc.*, 11 Ohio Misc. 131, 261 F.Supp. 136, 141 (1966). If, as here, plaintiff has not sufficiently established a specific injury within Ohio, personal jurisdiction over the football defendants cannot be justified.

Plaintiff claims that injury has been inflicted upon the citizens of Ohio by the football defendants' unfair trademark practices because "no person in Ohio has benefited [sic] from services at Mr. Webers [sic] domain names." (*See* Doc. 25 at 11). Weber's primary contention, however, is that the "effect of the defendants' acts has been to deprive the plaintiff of his property and to restrain trade *by the plaintiff* in Ohio and elsewhere." (*See* Doc. 37 at 3) (emphasis added). Thus, the injury claimed is to plaintiff himself. That injury did not occur in Ohio, as is required to exercise personal jurisdiction under the long arm statute. Accordingly, I shall grant the football defendants' motion to dismiss as to the remaining causes of action.

## CONCLUSION

It is, therefore,

ORDERED THAT the football defendants' motions to dismiss shall be granted.

So ordered.