RAMADA FRANCHISE SYSTEMS, INC., Plaintiff,

v.

HANNA HOTEL ENTERPRISES, LLC, et al., Defendants.

No. 3:00CV7180.

United States District Court, N.D. Ohio, Western Division.

May 4, 2001.

Joseph T. Dattilo, Charles D. Price, Brouse & McDowell, Cleveland, OH, Timothy J. Puin, Brouse & McDowell, Akron, OH, for Hanna Hotel Enterprises, LLC, Hanna Karcho.

Richard L. Emery, Martin J. Holmes, Jr., Shindler, Neff, Holmes & Schlageter, Toledo, OH, for Southwyck Hotels, LLC.

Steven A. Goldfarb, Arthur M. Kaufman, Nancy A. Oliver, Hahn, Loeser & Parks, Cleveland, OH, for Ramada Franchise Systems, Inc.

## ORDER

CARR, District Judge.

This is a breach of contract case in which plaintiff Ramada Franchise Systems ("RFS") alleges that defendants Hanna Hotel Enterprises ("Hanna Hotel") and Hanna Karcho sold a hotel, located in Toledo, Ohio, in violation of a license agreement between the parties. Jurisdiction arises pursuant to 28 U.S.C. § 1332. Pending is defendants' motion to dismiss for lack of personal jurisdiction and improper venue. (Docs. 29 and 30). RFS has also moved for summary judgment. (Doc. 27). For the following reasons, defendants' motion is denied and RFS' motion for summary judgment is granted.

## BACKGROUND

RFS, a Delaware Corporation with its principal place of business in Parsippany, New Jersey, operates a guest lodging (i.e., hotel) franchise system. Hanna Hotel is a Michigan limited liability company with its principal place of business in Bingham Farms, Michigan. Karcho is the principal of Hanna Hotel and is a citizen of Bloomfield Hills, Michigan.

On December 2, 1996, RFS entered into a license agreement ("License Agreement") with Bank One Cleveland ("Bank One") for the operation of a 264 room hotel located at 2425 S. Reynolds Road, Toledo, Ohio (the "Toledo hotel").

On July 8, 1998, Hanna Hotel, with Karcho as its sole shareholder, purchased the Toledo hotel from Bank One. On the same date, RFS, Bank One and Hanna Hotel executed an Assignment and Assumption Agreement ("Assignment") whereby Bank One assigned the License Agreement to Hanna Hotel. The License Agreement was negotiated between Hanna Hotel in Michigan and RFS in New Jersey; none of these negotiations took place in Ohio. The License Agreement was prepared by RFS, forwarded by RFS to Karcho in Michigan, and signed by Karcho in Michigan.

Pursuant to the License Agreement and Assignment, RFS granted Hanna Hotel the right to operate the Toledo hotel as a Ramada guest lodging facility for the remainder of the fifteen-year term, to expire on December 1, 2011.

On July 8, 1998, as a condition to RFS assigning the License Agreement to Hanna Hotel, Karcho was required to execute a personal guaranty for the performance of the License Agreement. The Guaranty was prepared by RFS, forwarded by RFS to Karcho in Michigan, and signed by Karcho in Michigan. Karcho alleges that, although she is the sole shareholder of Hanna Hotel, she has never received a salary or payment of any kind, directly or indirectly, from that corporation.

Pursuant to the Guaranty, Karcho personally guaranteed the obligations of Hanna Hotel. Specifically, Karcho agreed that upon default by Hanna Hotel, she would "immediately make each payment and perform or cause Licensee to perform each obligation required of Licensee under the [License] Agreement."

The License Agreement obligated Hanna Hotel to make certain periodic payments to RFS for royalties, service assessments, and other fees. In addition, the License Agreement required Hanna Hotel to prepare and submit monthly reports to RFS disclosing the amount of gross room revenue earned by Hanna Hotel at the hotel in the preceding month for purposes of establishing the amount of royalties and other recurring fees due to RFS.

Section 11 of the License Agreement provided that, if the defendants default under the terms of the License Agreement, they have ten days, after receiving written notice of the default by RFS, to cure the default. If the defendants cured the default, within that period, RFS would take no further action.

Hanna Hotel alleges that it never actually operated the Toledo hotel, but rather subcontracted the hotel's operation to a third party, Toll Grand Ventures, LLC. Toll Grand operated the hotel as an independent contractor. Hanna Hotel paid the recurring fees due under the assigned License Agreement to RFS in New Jersey.

Nine months after entering into the License Agreement, Hanna Hotel, according to RFS, sold the hotel to Southwyck Hotels, LLC, without notice to or the consent of RFS, in violation of §§ 9.1 and 18.2 of

the License Agreement.[1] In addition, RFS alleges that Hanna Hotel failed to pay recurring fees, in violation of § 7 and Schedule C of the License Agreement. Hanna Hotel allegedly did not inform RFS of the unauthorized transfer.

On learning of the transfer, RFS informed Hanna Hotel that the sale of the facility automatically terminated the License Agreement. RFS also notified Hanna Hotel of its post termination obligations and instructed Hanna Hotel to remit all past due recurring fees to RFS.

RFS filed suit in this court, alleging: 1) Southwyck Hotels, by using the Ramada name, was violating RFS's rights under federal trademark laws; 2) Hanna Hotel breached the License Agreement with RFS by failing to obtain RFS's consent before selling the hotel and failing to pay liquidated damages; and 3) Karcho breached the Guaranty Agreement which, inter alia, obligated her to perform Hanna Hotel's unfulfilled obligations under the License Agreement.

Hanna Hotel and Karcho have moved to dismiss the action based on lack of personal jurisdiction and venue. According to the defendants, Hanna Hotel has never had any bank account, offices, or employees in Ohio. Other than buying and later selling the Toledo hotel, Hanna Hotel has never transacted business or owned property in Ohio. Karcho contends that she has never transacted business in Ohio or had any employees, offices, or bank accounts in Ohio. In addition, the defendants claim not to be obligated to RFS for breach of contract. These arguments are without merit.

## ANALYSIS

### A. Personal Jurisdiction

■ The plaintiff must make a prima facie showing that the Court has personal

jurisdiction over each defendant. *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F.Supp.2d 722, 725 (N.D.Ohio 1999).

■ Federal courts apply a two-step analysis to determine whether personal jurisdiction exists over a nonresident defendant: 1) the defendant must be amenable to suit under the forum state's long arm statute; and 2) exercise of personal jurisdiction over the defendant must not violate due process. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998).

■ The Ohio long arm statute does not extend personal jurisdiction to the limits of due process. *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238 n. 1, 638 N.E.2d 541 (1994). Therefore, both steps require a separate analysis.

### 1. Ohio's Long Arm Statute

### A. Hanna Hotel

For this action, the relevant portions of Ohio's long arm statute, O.R.C. § 2307.382, are:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(8) Having an interest in, using, or possessing real property in this state.

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

■ Personal jurisdiction is proper under the Ohio statute if the cause of action

---

1. Southwyck and RFS have settled all matters in dispute between them.

"arise[s] from" the defendants' contacts with Ohio. *Glasstech,* 50 F.Supp.2d at 727–728.

RFS alleges that the defendants sold the Toledo hotel, without the prior consent of RFS, as demanded by § 9 of the License Agreement. According to RFS, Hanna Hotel contracted to supply services in Ohio when it purchased the hotel, thereby allowing this court to exercise personal jurisdiction under § 2307.382(A)(2).

Hanna Hotel argues that the long arm statute does not apply, because the claim is not based on Hanna Hotel's operation of the hotel, but rather Hanna Hotel's alleged failure to obtain consent before selling the hotel. According to Hanna Hotel, this failure occurred outside Ohio, and thus the long arm statute does not apply. I disagree.

Hanna Hotel's attempt to separate the place of the failure to obtain consent from the location of the hotel is without merit. Among other obligations under the License Agreement, Hanna Hotel contracted to supply the following services in Ohio: 1) to operate the Toledo hotel for 15 years; 2) to renovate and maintain the Toledo hotel; 3) to obtain the necessary permits from the appropriate Ohio political subdivisions and Ohio governmental entities; 4) to obtain Ohio beverage permits; and 5) to obtain Ohio property and casualty insurance. (Doc. 27 at Ex. C, §§ 5, 3.7, 3.10). Because these services took place in Toledo, personal jurisdiction is proper in this court. *See Busch v. Serv. Plastics, Inc.,* 11 Ohio Misc. 131, 261 F.Supp. 136, 140 (N.D.Ohio 1966) (contracting to supply goods to be delivered in Ohio provides the essential minimum contact to subject the participant to personal jurisdiction in Ohio).

### B. Karcho

■ RFS alleges that Karcho contracted to supply services in Ohio by signing a contract guaranteeing the obligations of Hanna Hotel. (Compl. at Ex. C.). I agree.

According to the Guaranty Agreement, Karcho agreed, upon Hanna Hotel's default, to immediately perform all obligations of the License Agreement. Karcho thus became liable for all of Hanna Hotel's required payments *as well as* the services that Hanna Hotel was required to perform, such as operating the Toledo hotel for 15 years, renovating and maintaining the Toledo hotel, and obtaining the necessary Ohio permits and insurance for the Toledo hotel.

Karcho argues that, because the Guaranty Agreement does not explicitly state that the services will take place in Ohio, personal jurisdiction over her is improper. This argument is without merit. The Guaranty Agreement refers specifically to the language of the License Agreement. The License Agreement implicitly references Ohio, because all services to be performed relate to the hotel, located in Toledo, Ohio. Because Karcho knew the location of the hotel, she was aware that all services relating to the hotel were to be performed in Toledo, Ohio.

■ Under § 2307.382(A)(1), the mere signing a Guaranty Agreement, without more, does not constitute "transacting business." *See Diebold, Inc. v. Firstcard Fin. Serv.,* 104 F.Supp.2d 758 (N.D.Ohio 2000); *Mustang Tractor & Equip. Co. v. Sound Envtl. Servs., Inc.,* 104 Ohio Misc.2d 1, 727 N.E.2d 977 (1999).

In this case, RFS relies on § 2307.382(A)(2), under which Ohio courts have personal jurisdiction over persons contracting to supply services in Ohio. Under the Guaranty Agreement, Karcho guaranteed more than just payment of any monies due to RFS from Hanna Hotel. She was a guarantor of all aspects of the

License Agreement, including, most importantly, the commitments relating to the services to be provided by Hanna Hotel under that agreement.

Karcho, therefore, has more significant Ohio contacts than the defendants in *Mustang* and *Diebold*. In *Mustang*, both plaintiff and defendant corporations were Texas corporations and the defendant president, who signed a Guaranty Agreement, was also a Texas resident. More importantly, the Guaranty Agreement covered only financial obligations and did not obligate the defendant to execute any unperformed services. Similarly, in *Diebold*, the agreement, signed by the nonresident guarantor defendant, did not obligate the defendant to perform services in Ohio.

Because I find that Karcho contracted for services in Ohio by guarantying all of Hanna Hotel's responsibilities under the License Agreement, this court has personal jurisdiction over her.

### 2. Due Process Requirements

■ The Sixth Circuit has established a three-part test to determine whether specific jurisdiction exists over a nonresident defendant to satisfy due process requirements. First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities in the forum state; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair. *Cole*, 133 F.3d at 436.

Hanna Hotel has met all three criteria by signing the License Agreement for the Toledo hotel. By contracting to operate a hotel in Ohio, Hanna Hotel "purposefully availed" itself of the privilege of conducting activities. The breach of contract action also "arises from" Hanna Hotel's failure to comply with the terms of the License Agreement, which governed the operation of the Toledo hotel. The final due process inquiry concerns whether the defendant has a substantial enough connection with Ohio to compel the defendant to suit in this court. In this case, a substantial connection exists, as a result of the commitments in the License Agreement regarding the Toledo hotel. Hanna Hotel has a substantial connection with this state.

Similarly, by signing the Guaranty Agreement, Karcho meets all three due process requirements. In *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134 (6th Cir.1982), the Sixth Circuit held the nonresident guarantors met due process requirements for specific jurisdiction in Kentucky by signing guaranty agreements. The guaranty agreement, the Sixth Circuit noted, allowed the plaintiffs to extend credit to the defendants, assisting in the creation of a Kentucky business. *Id.* at 9–10.

The *National* rule applies to this case. Karcho undertook an obligation which enabled Hanna Hotel to operate a hotel in Ohio. As in *National*, the Guaranty Agreement was essential for the start-up of Hanna Hotel's Ramada facility in Toledo. Therefore, the due process requirements for personal jurisdiction for both Hanna Hotel and Karcho are satisfied. *See also Reliance Electric Co. v. Luecke*, 695 F.Supp. 917 (S.D.Ohio 1988) (holding that a guaranty agreement by a nonresident guarantor given to an Ohio resident satisfies due process requirements).

### B. Venue

■ Hanna Hotel and Karcho argue that this court is not the proper venue for RFS' action. Under 28 U.S.C. § 1391(b),

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Because a "substantial part" of the events giving rise to this claim occurred in this judicial district, venue is proper under § 1391(b)(2).

In *First of Michigan Corp. v. Bramlet,* 141 F.3d 260 (6th Cir.1998), the Sixth Circuit held that venue under § 1391(b)(2) can be based on a single occurrence if it has a substantial connection to the claim. The Sixth Circuit noted that, instead of weighing all the evidence to determine which forum has the most connections, "the appropriate forum for a case is any forum in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* at 264.

■ When analyzing the "substantial part" test under § 1391(b)(2) for breach of contract actions, courts consider such factors as where the conduct underlying the breach occurred and where performance under the contract was to take place. *PKWare, Inc. v. Meade,* 79 F.Supp.2d 1007, 1016 (E.D.Wis.2000).

Hanna Hotel and Karcho argue that, because the alleged breach of contract took place in Michigan, no sufficient contacts in Ohio exist. This argument fails to consider that Hanna Hotel and Karcho were contractually obligated to perform services in Toledo. The License and Guaranty Agreements obligated Hanna Hotel, and, on default by Hanna Hotel, Karcho, to provide, in part, the following services: operate the Toledo hotel for 15 years, renovate and maintain the Toledo hotel, and obtain the necessary Ohio permits and insurance for the Toledo hotel. Because Toledo is the place of performance for both contracts, a substantial part of the events giving rise to this claim occurred in Ohio.

## C. Breach of Contract Claim

■ As dictated by § 17.5 of the License Agreement, New Jersey law governs this breach of contract claim.

Hanna Hotel and Karcho sold the hotel without RFS' prior consent in breach of the License Agreement. (Doc. 28 at 3; Doc. 27 at Ex. C, §§ 9.1 and 18.2). Karcho argues that RFS is precluded from recovering for this breach, because RFS did not notify Karcho of any alleged default by Hanna Hotel. Karcho argues that the Guaranty Agreement required, as a condition precedent to Karcho's obligations, that RFS immediately notify Karcho of Hanna Hotel's default. I disagree.

The Guaranty Agreement provides:

Upon default by Licensee and notice from the Company, the undersigned will immediately make each payment and perform or cause to Licensee to perform, each obligation required of Licensee under the Agreement.... The undersigned waive notice of amendment of the Agreement, the giving of notice or demand by the Company [RFS] for payment or performance by Licensee....

(Doc. 1 at Ex. C).

Under the plain language of the contract, Karcho waived the right to receive notice of Hanna Hotel's default. *See Armco, Inc. v. Glenfed Fin. Corp.,* 746 F.Supp. 1249, 1251 (D.N.J.1990) ("construction of

an unambiguous term in a contract is exclusively within the court").[2] Therefore, Karcho's argument that the alleged failure to give notice precludes recovery for breach of contract is without merit.

### D. Damages

#### 1. Recurring Fees

The defendants are obligated to pay Recurring Fees under the License Agreement and Guaranty. (Doc. 27 at Ex. C, § 7). RFS has provided the court with an account of the Recurring Fees, totaling $34,493.86. (Doc. 35).

Hanna Hotel and Karcho argue that there is an issue of material fact precluding this court from granting summary judgment on the issue of Recurring Fees, because they contend that RINA fees should not be included as part of the fees. RINA (Ramada Inns National Association) fees relate to advertising, marketing, training and other related services of the Ramada franchise. (Doc. 27 at Ex. C, § 7.1.2). Schedule C provides that RINA fees are 4.5% of gross room revenues. Because the License Agreement includes RINA fees as part of Recurring Fees, Hanna Hotel and Karcho have not produced material issues of fact concerning the Recurring Fees due, and RFS is entitled to $34,493.86.

#### 2. Liquidated Damages

Under New Jersey law, whether a stipulated damages clause is enforceable depends on whether the provision is a valid liquidated damage clause or an unenforceable penalty provision. *Wasserman's Inc. v. Township of Middletown*, 137 N.J. 238, 248, 645 A.2d 100 (N.J.1994). In commercial contracts, stipulated damages clauses are presumptively valid. *Metlife Capital Fin. Corp. v. Washington Ave.*

*Assoc. L.P.*, 159 N.J. 484, 494, 732 A.2d 493 (N.J.1999). The party challenging the clause must demonstrate that it is an unenforceable penalty. *Wasserman's*, 137 N.J. at 252, 645 A.2d 100.

New Jersey courts apply a reasonableness test to determine: 1) whether the set amount is a reasonable forecast of compensation for the harm caused by the breach; and 2) whether the harm is incapable or difficult to estimate. According to the New Jersey Supreme Court, "the greater the difficulty in estimating or proving damages, the more likely the stipulated damages will appear reasonable." *Id.* at 250, 645 A.2d 100.

I find that the liquidated damages provision is reasonable and, as such, RFS is entitled to $100,000. (Doc. 27 at Ex. C, §§ 12.1 and 18.1). The License Agreement provides that the amount of liquidated damages is related to the fees and royalties that RFS will not receive due to the terminated agreement. *Id.* This satisfies the first reasonableness inquiry by demonstrating the liquidated damages are related to the breach of contract damages. In addition, RFS points out that gross room revenues can fluctuate from month to month based on factors such as the regional economy, travel patterns, and the entry of competitors into the market. (Doc. 27 at 16). RFS has demonstrated that the liquidated damages are reasonable due to the difficulty in estimating actual damages. *See Ramada Franchise Sys., Inc. v. Polmere Lodging Corp.*, Civ. No. 98–2809 (D.N.J.1999) (unpublished) (determining $222,000 in liquidated damages is reasonable for breach of license agreement); *Days Inn of America, Inc. v. VNR, Inc.*, Civ. No. 98–2507 (D.N.J.1999) (unpublished) (holding $2000 per room in liquidated damages is reasonable); *Howard*

---

**2.** Under § 17.5 of the License Agreement, New Jersey law governs the breach of con-

tract claim.

*Johnson Int'l, Inc. v. R.S Hospitality, Inc.,* Docket No. 96–3799 (D.N.J.1998) (granting award of liquidated damages for $370,000).[3]

### 3. Attorney Fees

The License Agreement states that defendants will pay "all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement". (Doc. 27 at Ex. C, § 17.4). RFS, therefore, is entitled to this award. *See North Bergen Rex Transp., Inc. v. Trailer Leasing Co.,* 158 N.J. 561, 570, 730 A.2d 843 (1999) ("a party may agree by contract to pay attorneys' fees").

### Conclusion

Accordingly, it is hereby

ORDERED THAT

1. Defendants' motion to dismiss based on lack of personal jurisdiction and venue (Docs. 29 and 30), be, and hereby is, denied.

2. RFS' motion for summary judgment be, and hereby is, granted.

3. RFS to file a statement of its attorneys' fees and costs by May 15, 2001, with supporting memorandum; defendants' opposition, if any, to be filed by May 30, 2001; RFS' reply to be filed by June 15, 2001. Final judgment will be entered in favor of RFS and against defendants on determination of accounts due for fees and costs which shall be added to the amounts due for liquidated damages and Recurring Fees.

So ordered.

---

3. Defendants point to *Ramada Franchise Sys., Inc. v. Tresprop,* Civ. No. 98–2511, 1999 U.S. Dist. LEXIS 18348 (D.Ct.Kan.1999) where the court held that genuine issues were raised concerning the enforceability of the liquidated damages clause for $2000 per room. The weight of authority under New Jersey law, however, provides that the liquidated provision at issue is reasonable.