David IRIZARRY, et al., Plaintiffs,

v.

EAST LONGITUDE TRADING CO.
LTD., et al., Defendants.

No. 3:02CV7575.

United States District Court,
N.D. Ohio,
Western Division.

Nov. 24, 2003.

Michael J. Leizerman, Law Office of E.J. Leizerman, Ronald F. Leonhardt, E.J. Leizerman & Associates, LLC, Toledo, OH, for David Irizarry, Yvonne Irizarry, Plaintiffs.

Todd L. Platek, DeOrchis & Partners, LLP, New York City, Joseph P. Dawson, Vassar, Dills & Dawson, Matthew J. Rohrbacher, C. Randolph Light, Rohrbachers, Light, Cron & Trimble, Toledo, OH, for East Longitude Trading Co. Ltd, Penn State Industries, Defendants.

## ORDER

CARR, District Judge.

This is a products liability action in which plaintiffs David and Yvonne Irizarry have sued defendants East Longitude Trading Co. (ELT) and Penn State Industries (PSI). This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Pending is defendant ELT's Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. For the following reasons, ELT's motion shall be granted.

## BACKGROUND

This action arises out of an allegedly defective woodworking tool manufactured and/or distributed by defendant ELT. (Doc. 27, at 2). ELT is a foreign limited liability corporation whose principle place of business is in Taichung, Taiwan. (Id.; Doc. 32, at 5, ¶ 1). ELT distributes products through defendant PSI, which periodically issues sales catalogues to potential customers through the mail. (Doc. 27, at 2). PSI is incorporated in Pennsylvania and has its principle place of business in Philadelphia, Pennsylvania. (Doc. 1, at ¶ 1).

On June 7, 1989, PSI entered into an indemnification agreement with ELT whereby ELT agreed to indemnify PSI fully for any suit brought for or on account of any injury to any person as a result of any malfunction of ELT's woodworking

products. The 1989 Indemnification Agreement states that "[PSI] has purchased and intends to continue to purchase from ... [ELT], woodworking products ... for sale and distribution in the United States of America." (Doc. 25, at 2).

Since 1989, ELT has obtained about $150,000.00 annually from sales of its products by PSI in Ohio, with total sales that exceed $2,000,000.00. (Doc. 27, at 3). Plaintiff supports these assertions with an affidavit from Edwin Levy, Vice President of PSI, and argues that the aforementioned activities are sufficient to support personal jurisdiction over defendant ELT. There is no evidence that ELT has ever sold directly in Ohio.

On December 7, 2000, plaintiff David Irizarry, who is a resident of Ohio, ordered a "wood chuck," an attachment for a woodworking lathe, from the PSI catalogue. (Doc. 27, at 2). ELT manufactured and sold the wood chuck to PSI pursuant to its agreement with ELT. Shortly after plaintiff began to use the chuck, it fragmented, causing injuries and giving rise to the instant action. (*Id.*). Both plaintiff and defendant PSI oppose the granting of ELT's motion to dismiss for lack of personal jurisdiction.

## STANDARD OF REVIEW

"The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). Plaintiff bears the burden of establishing personal jurisdiction over defendants. *Id.; CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996). Moreover, plaintiff may not stand on its pleadings to meet its burden; plaintiff must "set forth specific facts showing that the court has jurisdiction." *Theunissen,* 935 F.2d at 1458. However, because this court has elected to decide this motion based on affidavits alone, plaintiff's pleadings and affidavits will be considered in a light most favorable to plaintiff. *Id.* A court in this situation "does not weigh the controverting assertions of the party seeking dismissal." *Id.* at 1459.

## DISCUSSION

### A. General Personal Jurisdiction

The undisputed evidence in this case establishes that this court cannot assert general jurisdiction over defendant ELT.

The Supreme Court has set forth a specific test for the exercise of general jurisdiction in *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A court may exercise general personal jurisdiction over a defendant in a suit not arising out of or related to defendant's contact with the forum state if the nature of defendant's contacts with the state are such that they are continuous and systematic. *Id.* The Supreme Court in *Helicopteros* did not define the nature of "continuous and systematic." *Hunter v. Armando Mendoza,* 197 F.Supp.2d 964, 969 (N.D.Ohio 2002). This determination is for individual courts. *Id.*

While the Supreme Court's decision in *Helicopteros* did not offer specific guidance as to what constitutes "continuous and systematic" contacts, it makes clear that substantial forum contact is necessary for this court to exercise general jurisdiction over a defendant. *Helicopteros* involved a helicopter owned by the defendant company, which crashed in Peru, killing four U.S. citizens on board, and their survivors brought suit in Texas. *Helicopteros,* 466 U.S. at 409, 104 S.Ct. 1868. The defendant, a Columbian corporation, had significant contacts with the forum state, which included sending its pilots to be trained there, negotiating a contract in Texas, accepting checks drawn from a Houston

bank, and purchasing most of its helicopter fleet in Texas. *Id.* at 416, 104 S.Ct. 1868. Nevertheless, the Court held these contacts insufficient to establish general jurisdiction over the defendant. *Id.*

■ In the instant case, contrary to plaintiff's assertions, this court cannot exercise general jurisdiction over ELT. ELT is a foreign-based company that has never done any business directly with Ohio. ELT has never negotiated any deals with anyone in Ohio, nor has it shipped any of its products directly to Ohio. ELT does not visit Ohio to facilitate its business. Thus, this court does not have general personal jurisdiction over ELT.

## B. Specific Personal Jurisdiction

■ Because there is no general personal jurisdiction over ELT, plaintiff must make a prima facie showing that this court has specific personal jurisdiction over ELT. *Glasstech, Inc. v. TGL Tempering Sys., Inc.,* 50 F.Supp.2d 722, 725 (N.D.Ohio 1999). "To determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *CompuServe,* 89 F.3d at 1262. This requires a two-step analysis: 1) the defendant must be amenable to suit under the Ohio long-arm statute; and 2) the exercise of personal jurisdiction must not violate due process. *Ramada Franchise Sys., Inc. v. Hanna Hotel Enters., LLC,* 147 F.Supp.2d 840, 844 (N.D.Ohio 2001) (citing *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir. 1998)).

The Ohio Supreme Court has determined that Ohio's long-arm statute does not extend personal jurisdiction to the limits of due process. *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 238 n. 1, 638 N.E.2d 541 (1994). Therefore, both prongs of the constitutional analysis must be analyzed separately. *Hunter v. Ar-*

*mando,* 197 F.Supp.2d 964, 968 (N.D.Ohio 2002).

### 1. The Ohio Long–Arm Statute

The Ohio long-arm statute, O.R.C. § 2307.382(A), states that personal jurisdiction arises from:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . .;

(5) Causing injury in this state to any person by breach of warranty . . .;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons . . .;

(7) Causing tortious injury to any person by a criminal act . . .;

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state . . . .

■ Though plaintiff asserts that ELT satisfies subsections (1) and (3) of the long-arm statute, those subsections do not apply to ELT. Subsections (1) and (3) contemplate conduct that occurs in the state of Ohio. Here, ELT never transacted any business within the state of Ohio. Moreover, the alleged tortious act or omission, defective design, did not occur in Ohio. Therefore, subsections (1) and (3) are inapplicable in the present action.

However, ELT's contacts with Ohio are sufficient to satisfy subsection (4) of the Ohio long-arm statute. Subsection (4) of the Ohio long-arm statute provides personal jurisdiction over a defendant who causes an injury within the state from outside of Ohio if the tortfeasor 1) regularly does or solicits business in Ohio, 2) engages in any other persistent course of conduct in Ohio, or 3) derives substantial revenue from goods used or consumed or services rendered in Ohio. Ohio Rev.Code § 2307.382(A)(4).

No evidence is before this court to establish that ELT's Ohio contacts satisfy the first two elements of subsection (4). Regularly doing or soliciting business "contemplates contacts or activities in Ohio." *Busch v. Service Plastics, Inc.*, 261 F.Supp. 136, 141 (N.D.Ohio 1966). Moreover, " 'any other persistent course of conduct' signifies conduct within Ohio by the person charged with causing the injury." *Id.* Because there is no evidence to establish ELT's direct contact with, or conduct in, Ohio, neither of the first two elements of subsection (4) is satisfied.

A non-resident defendant, however, may derive substantial revenue from goods consumed in this state without regularly doing or soliciting business in Ohio or without engaging in any other persistent course of conduct in Ohio. *Id.* at 142 (holding that defendant's dollar volume of sales annually ranging between $100,000.00 and $200,000.00 over a 5–year period was sufficient to establish that defendant derived substantial revenue from Ohio). Moreover, "substantial revenue" is a flexible term, and this court has considerable latitude in determining what constitutes substantial revenue. *Hoover Co. v. Robeson Indus. Corp.*, 904 F.Supp. 671, 674 (N.D.Ohio 1995).

■ In the instant case, the evidence before the court establishes that ELT derived substantial revenue from Ohio. From the time of the 1989 Indemnification Agreement, ELT derived an average of $150,000.00 annually from the sale of its products in the state of Ohio, with total sales exceeding $2,000,000.00. Accordingly, I agree with plaintiff that defendant ELT derived substantial revenue from its sales in Ohio. Thus, ELT is subject to personal jurisdiction under subsection (4) of the Ohio long-arm statute.

### 2. Constitutional Due Process

■ Despite the applicability of the long-arm statute, the exercise of personal jurisdiction over ELT does not comport with the due process clause of the Fourteenth Amendment.

For personal jurisdiction to be constitutional under the due process clause, ELT must have certain minimum contacts with the state of Ohio such that maintenance of the suit in Ohio does not offend traditional notions of fair play and substantial justice. *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154.

■ The Sixth Circuit has established a three-part test to determine the constitutionality of exercising specific personal jurisdiction over a non-resident defendant: 1) ELT must purposefully avail itself of the privilege of conducting activities in Ohio or causing consequence in Ohio; 2) the cause of action must arise from ELT's activities in Ohio; and 3) the acts of ELT or the consequences caused by it must have a substantial enough connection with Ohio to provide that exercising jurisdiction over ELT is reasonable. *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968); *see also Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 477–78 (6th Cir. 2003).

The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that

create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that it should "reasonably anticipate being haled into court there." *CompuServe, Inc.*, 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

To make this determination, the Sixth Circuit has adopted Justice O'Connor's "stream of commerce 'plus'" approach, set forth in *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). *See Bridgeport Music, Inc.,* 327 F.3d at 479. Under this theory, "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* (quoting *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026).

The Sixth Circuit has held that an out-of-state defendant purposely directed its activities at the forum state where the defendant manufacturer had a nationwide distribution agreement with a distributor of pharmaceuticals. *Tobin v. Astra Pharm. Prod., Inc.,* 993 F.2d 528, 544 (6th Cir.1993). In *Tobin,* the distribution agreement required the distributor to distribute the defendant's product throughout the "United States of America, its territories and possessions, and Puerto Rico." *Id.* at 543. The agreement also required the distributor to "regularly consult with [defendant] as to its dealings with the FDA and obtain [defendant's] advice and agreement prior to submitting to the FDA any information to the FDA on the Product, its labeling, package inserts or otherwise." *Id.* The court found that this language indicates defendant intended to retain control over the manner in which the distributor marketed its products. *Id.*

In *Tobin,* the defendant submitted an application to the FDA for approval to distribute the drug in the United States. *Id.* In addition, the defendant came to the United States to conduct clinical studies to further the FDA's approval of the drug. *Id.* The court stated that "designing the product for the market in the forum state" can indicate an intent or purpose to serve the forum state, and that defendant's efforts in obtaining FDA approval permitted defendant to avail itself of the "vast, lucrative markets of each state in the United State." *Id.* Holding the defendant amenable to suit, the court in *Tobin* stated:

> We find helpful the reasoning of *Mott v. Shelling & Company,* No. 91–1540, 1992 WL 116014, 1992 U.S.App. LEXIS 13273 (6th Cir. May 29, 1992). In *Mott,* we affirmed the exercise of personal jurisdiction over the defendant, Schelling, the Austrian designer and manufacturer of an industrial saw that injured the plaintiff. Noting that Schelling sold saws all over the world and maintained an exclusive American sales agent, we found significant the fact that United States standards were taken into account in the design and manufacture at issue. Additionally, we recognized that the product was available only through the United States distributor. Schelling knew its saws we being sold in the United States. [Schelling] actively cultivated its market there, and benefited from numerous U.S. sales, including the one in this case, over many years. Clearly Schelling cannot reasonably expect to sell a potentially dangerous product into the United States, exact its price, and then shirk any obligations that arise when its machine goes awry. Due Process does not require us to allow Schelling to exploit this country's vast, rich markets and at the same time avoid the jurisdiction of our courts.

*Id.* at 545.

The Sixth Circuit has recently considered *Tobin* in *Bridgeport Music, Inc.,* 327

F.3d 472, which involved copyright infringement claims where the plaintiff asserted that the defendant had a financial interest in selling records throughout the United States. *Id.* at 480. Plaintiff further supported its argument by noting that the defendant did not object to its compositions being sold in the forum state, Tennessee. *Id.* The plaintiff argued, based on the rationale set forth in *Tobin,* that the defendant's conduct constituted purposeful availment. *Id.*

In rejecting the *Bridgeport* plaintiff's argument, the Sixth Circuit held:

> In contrast to *Tobin,* [defendant's] contacts with Tennessee in the instant action lack the additional element present in *Tobin,* chiefly, the fact that the *Tobin* defendants were not merely aware that their distributor was likely to market the product in all fifty states; *rather, the parties' contract required it.* Unlike in *Tobin,* [plaintiff] does not assert that [defendant] entered into a distribution agreement ... that placed an affirmative obligation upon the third party to distribute [defendant's] compositions in [the forum state] or elsewhere. [Plaintiff] even concedes that ... "how the subject composition is exploited is pretty much out of [defendant's] hands." [Defendant's] knowledge that [the distributor] was likely to distribute [defendant's] compositions nationally, coupled with its lack of objection to [sales in the forum state], if such sales were ever to occur, is insufficient conduct upon which to predicate purposeful availment.

*Id.* (emphasis supplied).

Unlike the situation in *Tobin,* there is no evidence in this case that ELT designed its products expressly for the United States or Ohio markets. Moreover, the court in *Tobin* emphasized that the defendant controlled the manner in which its distributor distributed its products. Here, there is no evidence that ELT retained any control over how, when, or where PSI distributed the products.

As in *Bridgeport,* where the distributor was not required to distribute the defendant's products on a nationwide basis or in a particular market, nothing in the 1989 Indemnification Agreement places an affirmative obligation on PSI to distribute ELT products throughout the United States or anywhere else. Finally, as the court held in *Bridgeport,* purposeful availment is not established by the fact that ELT knew, and did not object to, PSI distributing its products nationally. Accordingly, ELT's conduct is insufficient to establish that it purposefully availed itself of conducting activities in Ohio.

It has not been shown that ELT has purposefully availed itself to suit in Ohio. Because purposeful availment is the first of the three *Mohasco* factors for determining whether exercise of personal jurisdiction over a non-resident defendant comports with due process, the exercise of personal jurisdiction over ELT in this court violates the due process clause of the Fourteenth Amendment. *See Bridgeport Music, Inc.,* 327 F.3d at 477–78.

## CONCLUSION

Although defendant ELT's Rule 12(b)(2) motion to dismiss will be granted, the 1989 Indemnification Agreement between ELT and PSI sets forth a choice-of-law clause that designates Pennsylvania as the appropriate venue for litigating actions arising out of injuries covered under the agreement. Therefore, in the interest of justice, the proceedings against ELT and PSI shall be transferred to the appropriate district court in Pennsylvania, which has personal jurisdiction over all defendants. 28 U.S.C. § 1631.

In light of the foregoing, it is

ORDERED THAT

1) Defendant ELT's Rule 12(b)(2) motion to dismiss for lack of jurisdiction over the person be, and hereby is, granted.
2) This case be, and hereby is, transferred to the United States District Court for the Eastern District of Pennsylvania for further proceedings.

So ordered.